CLARENCE W. ALEXANDER, Doing Business as CONSOLIDATED COAL COMPANY, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

In Banc, April 30, 1920.

1. **PLEADING: Cause of Action: Refusal to Deliver Cars: Intrastate Shipment.** The statute (Sec. 3184, R. S. 1909) affixing a penalty against a railroad company for refusal to deliver freight cars to the consignee, contains no provision limiting its application to intrastate shipments, and where the petition does not allege that the particular shipment was either an interstate or an intrastate shipment, if defendant wishes to raise the point that the shipment did not come within the purview of the State statute, for that the Federal statute exempts interstate shipments from its operation, it must do so by pleading in its answer the exemption as a defense. An exception to the operation of a statute, if contained in a separate section or in a Federal statute, cannot be raised by demurrer, but to be available must be pleaded as a defense.

    *Held*, by GRAVES, J., dissenting, with whom WOODSON, J., concurs, that Section 3204 in specific terms limits an action brought under Section 3184 to intrastate shipments, for it says that "all the provisions of Sections 3179 to 3207 shall be held to apply to shipments made from one point within the State to any point within the State:" and therefore a petition which shows a shipment to have been an interstate one would be demurrable, but if it does not so allege the point that the shipment was interstate must be pleaded in the answer.

2. **REFUSAL TO DELIVER CARS: Penal Statute: Construction: Intent.** The statute (Sec. 3184, R. S. 1909) declaring that "it shall be unlawful for any common carrier to subject any particular person to undue or unreasonable prejudice or disadvantage with respect to the transportation" of a freight car, and subjecting it to damages in treble the amount sustained, is penal in its nature, and the rule of strict construction applies; but it is to be construed according to its true meaning and intent and so as not to defeat the plain legislative intent.

3. ———: **Ill-Will.** An arbitrary and unreasonable refusal of a railroad company to deliver a shipment of coal to its consignee

falls within the true meaning and plain intent of the statute, although said refusal is not the outgrowth of ill-will, disfavor or other malicious intent.

4. ————: Preference. In order for a consignee of a shipment of coal to make out a case of damages for an arbitrary or unreasonable refusal to deliver the car, it is not necessary for him to show that defendant gave undue or unreasonable preference to some other person or shipment. The statute (Sec. 3184, R. S. 1909) does forbid a common carrier "to give undue or unreasonable preference or advantage to any particular person," but it also forbids the carrier to subject any particular person "to any undue or unreasonable prejudice or disadvantage," and it is not necessary that the carrier be shown to have violated the first prohibition in order to hold it liable for the second offense.

5. ————: Attorney's Fee: Constitutional Statute. The statute (Sec. 3191, R. S. 1909) which allows a reasonable attorney's fee to be taxed as costs in favor of a plaintiff in a suit against a common carrier for damages for an arbitrary or unreasonable refusal to deliver a freight car to the consignee of the shipment, applying alike to all common cariers, is not violative of Section 1 of the Focrteenth Amendment, prohibiting a state from depriving a citizen of due process of law or denying to any of its citizens the equal protection of the laws, or of Section 30 of Article 2 of the Constitution of Missouri, guaranteeing to all persons due process of law. [Overruling Paddock v. Mo. Pac. Ry. Co., 155 Mo. 524, and Thompson v. Traders Ins. Co., 169 Mo. 12.]

  *Held*, by GRAVES, J., dissenting, with whom WOODSON, J., concurs, that the attorney's fee and the provision for treble damages are both penalties, and the penalties are unreasonable, and violate the Fourteenth Amendment.

6. ————: Treble Damages. The penalty that may be imposed upon a common carrier for an arbitrary or unreasonable refusal to deliver a car to the consignee of a shipment must not be so severe and oppressive as to be wholly disproportionate to the offense, or obviously unreasonable. But a statute which requires the actual damages recovered to be trebled does not violate the rule.

  *Held*, by GRAVES, J., dissenting, with whom WOODSON, J., concurs, that the penalty imposed by the statute, being both an attorney's fee and twice the amount of the adjudicated damages, is unreasonable, and to that extent the statute is void.

7. ————: ————: Legislative Discretion. The Legislature is accorded wide discretion and large latitude in fixing the amount of the penalty to be imposed on a common carrier for an arbitrary or unreasonable refusal to deliver a freight shipment to the consignee,

and its discretion will not be held to have been oppressively exercised unless the penalty affixed is obviously disproportionate to the offense and unreasonable; and a statute which fixes the penalty at twice the damages actually sustained and in addition allows the court to tax an attorney's fee in favor of the successful plaintiff, is not an unreasonable exercise of legislative discretion. [GRAVES and WOODSON, JJ., dissenting.]

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*Fred S. Hudson* for appellant.

(1) The verdict is not supported by the evidence; therefore cannot be upheld by this court. McFarland v. Accident Assn., 124 Mo. 204; Cole v. Armour, 154 Mo. 332; Hewitt v. Steel, 136 Mo. 237; Peffer v. Railway, 98 Mo. App. 291; Peck v. Railway, 31 Mo. App. 128. (2) Plaintiff is suing for penalties; therefore his case must be strictly construed, nothing taken by intendment, and he must bring himself within all the provisions of the statute. Rixke v. Tel. Co., 96 Mo. App. 406; Eddington v. Tel Co., 115 Mo. App. 98; Cornell v. Tel. Co., 108 Mo. 459. (3) Before plaintiff can recover, he must plead and prove that the shipment complained of was intrastate. Steel v. Railway, 165 Mo. App. 314. (4) The court had no right to assess an attorney fee as costs in this case. Paddock v. Railway, 155 Mo. 524; G. C. & S. E. Ry. v. Ellis, 165 U. S. 150. (5) Before plaintiff can recover, he must show that defendant showed undue and unreasonable preference or advantage to another shipper and that ill will, coercion or disfavor was shown the plaintiff. Cohn v. Ry. Co., 151 Mo. App. 688; Wynn v. Railway, 111 Mo. App. 648. (6) Sections 3184 and 3191, on which this suit is brought, are in violation of the Constitution of the State of Missouri and of the United States as they discriminate against one class of litigants and in favor of another and the penalty is

unreasonable, unjust and excessive.  Polt v. Ry. Co., 232 U. S. 165; Y. & M. V. Railroad Co. v. Vinegar Co., 226 U. S. 117.

*Strother & Campbell* for respondent.

(1)  If there is any substantial evidence, the verdict will not be disturbed on appeal.  (2)  The wrongs complained of (refusal to switch cars to plaintiff, thereby working undue and unreasonable disadvantage) comes clearly within the provisions and manifest spirit and intent of the statute.  Cohn v. Railway, 181 Mo. 45. Both the petition and the evidence show the switch track in question and terminals and yards of defendant to be located in Kansas City, Missouri, and that the shipment came from the mines at Macon, Missouri, everything about the car being intrastate.  Although we do not see what difference it would make if the car had come from Kansas, Iowa, Kentucky, or any of the other states of the Union, as the wrong was a refusal to receive and switch cars to plaintiff at his place of business in Kansas City, Missouri, after they had been delivered to defendant in its terminal yards in Kansas City, Missouri.  (4)  The Ellis case has been distinguished in Railroad v. Matthews, 174 U. S. 96, and M. K. & T. Ry. Co. v. Cabe, 233 U. S. 648. Section 3191 is leveled at common carriers, and there is a great distinction between the statutes brought in question in the Ellis and Paddock cases and in Section 3191.  Cohn v. Railway, 180 Mo. 30;  K. C. S. Ry. Co. v. Anderson, 233 U. S. 325.  (5)  Sec. 7068, R. S. 1909, providing for reasonable attorney fees where insurance companies vexatiously refusing to pay a loss has been upheld both by the State appellate courts and the Supreme Court of the United States. Rogers v. Ins. Co., 186 Mo. 248.  Martin v. Ins. Co., 190 Mo. App. 703; Williamson v. Ins. Co., 72 C. C. A. 542; Farmers Co. v. Dobney, 189 U. S. 301.  We can see no difference in a statute which places the same burden on all common carriers and a statute which places the same burden on

all persons engaged in insurance business. (6) What has been said above concerning attorney fees, may be included on the question of constitutionality of Sections 3184 and 3191. Railroad v. Vinegar Co., 226 U. S. 217. The opinion in this case upholds this kind of statute, when we keep in mind that this statute is leveled against common carriers as a whole and not merely against railroad companies. Seaboard Air Line v. Seeger, 207 U. S. 73; Yazoo & M. V. R. Co., v. Jackson Vinegar Co., 226 U. S. 217; Kansas City South. Railroad Co. v. Anderson, 233 U. S. 325; M. K. & T. Ry. Co. v. Cade, 233 U. S. 651. (7) The theory upon which a statute of this kind is held constitutional is not to enforce the collection of debts, but to compel the performance of duties which the carrier assumes when it enters upon the discharge of its public functions. The Statute is not leveled at corporations alone, but at all carriers. The classification is based solely upon the nature of the business, the nature of this business being that of a public carrier.

WILLIAMSON, J.—Clarence W. Alexander, doing business under the name of Consolidated Coal Company, brought this suit against the Chicago, Milwaukee & St. Paul Railway Company, under the provisions of Sections 3184 and 3191, Revised Statutes 1909, to recover damages arising from an alleged violation of said Section 3184 on the part of the defendant, and for treble damages and attorney's fees as provided by Section 3191.

The petition, in substance, after formal allegations states that the defendant, a common carrier, without just cause or legal excuse refused to deliver shipments of coal consigned to plaintiff, and that under the provisions of Section 3184, Revised Statutes 1909, it is unlawful for a common carrier to subject any one shipper or consignee to any undue or unreasonable prejudice or disadvantage, but that it is the duty of such carrier to afford all equal facilities for traffic; that defendant's

conduct was in violation of this statute, in that it refused to accept cars of coal consigned to plaintiff, and turned back and refused to deliver coal shipped to him; and that by reason of these alleged unlawful acts of the defendant, plaintiff had sustained damages in the sum of one thousand dollars. The answer was a general denial. Upon a trial by jury, a verdict was rendered in favor of the plaintiff in the sum of two hundred dollars. Under the authority of Section 3191, supra, this sum was by the court trebled, and judgment rendered in the amount of six hundred dollars, and the court also allowed to plaintiff the sum of seventy-five dollars, as attorney's fees. It was agreed that the evidence would show that amount to be a reasonable allowance for the services of plaintiff's attorney. Motions for a new trial and in arrest of judgment were filed and overruled, and by appropriate steps the case has been brought to this court. Jurisdiction is vested in this court because the constitutionality of the sections of the statute above mentioned is involved.

The essential facts out of which this controversy arose, are, as shown by the record, as follows: The plaintiff was engaged in the business of selling coal at retail in Kansas City, Missouri, where he maintained a coal yard. The yard was about fifty feet in width at the rear end, where it abutted upon an alley in which a railroad switch was operated by defendant. From this switch plaintiff's coal yard was served. At the rear end of plaintiff's lot there was a board fence about six feet high, extending entirely across the lot. This fence stood about eighteen inches west of the east line of the lot. Outside of the fence and between it and the railroad track above mentioned, there were two or three telephone or electric light poles, which appear to have been about fifteen to eighteen inches in diameter near the base. The fence was old and had gradually become inclined outward and toward the railroad track. Some time in the early part of 1913, an association of railroad employees known in this record as the "Safety
282 Mo.—16

First Committee,'' complained to Mr. W. L. Richards, the superintendent of defendant railway company, that the condition of this fence made it dangerous to set cars on the switch in the rear of plaintiff's lot. Thereupon, about May 21, 1913, Richards informed plaintiff of that fact by letter, claiming in the letter that the fence leaned to such an extent that it was out over the track, and that a boxcar in passing barely cleared the fence, and requested plaintiff to correct this dangerous condition without delay. Several similar letters followed from defendant to plaintiff, including threats on the part of defendant to decline to render switch service to plaintiff unless the fence were repaired and a number of petty bills claimed by defendant to be due it from plaintiff were promptly paid. These bills amounted to less than twenty dollars, and plaintiff disputed some of them. The parties agreed, however, upon an adjustment of these charges, and the balance found to be due to defendant was paid. Plaintiff made some repairs upon the fence in the early part of September, 1913, and about September 18, 1913, requested defendant to deliver a car of coal upon the switch above mentioned, to be unloaded into plaintiff's coal yard. Defendant had received from the Burlington Railroad Company a car of coal shipped to plaintiff, but after an examination of the fence as repaired, notified plaintiff that the repairs were not sufficient, and refused to place the car of coal upon the switch. Plaintiff declined to make further repairs and defendant, after holding the car of coal for three days, returned it to the Burlington Railroad Company. Plaintiff had closed down his coal yard during the summer, but in September tried to reopen it for business, with the results above stated. After the car of coal above mentioned had been delivered to defendant in Kansas City, Missouri, for plaintiff, defendant notified plaintiff that it would lift the embargo which it had placed upon his shipping facilities, provided he would put the fence in satisfactory condition and agree to pay ''all just car service bills when found

to be correct by the Bureau,'' and further agree to pay all damages which might accrue to defendant's cars and equipment by reason of plaintiff's employees handling such cars and equipment. The ''Bureau'' mentioned seems to have been an organization maintained by defendant alone, or by it and other railroad companies. Thereupon plaintiff brought this suit.

There is a sharp conflict in the evidence as to the extent to which the fence in question leaned toward the railroad track. The evidence in behalf of plaintiff tended to show that the fence was about six feet high; that it set back about eighteen inches west of the property line; that the telephone poles in question stood adjoining the fence and between it and the switch track at intervals along in the rear of plaintiff's lot; that the fence never at any time inclined to a point beyond the east line of these poles, and that the poles mentioned were set west of the switchtrack far enough to permit the safe operation of cars on that track. The evidence in behalf of the defendant tended to show that the fence inclined so far into the alley as to make the handling of cars upon the switch dangerous; that in places the cars had a clearance of only two to four inches, and that in at least one instance a car was scraped by the fence while being set upon this track. No personal hostility was shown to exist between Richards or any other employee of the defendant company and the plaintiff. There was evidence tending to support plaintiff's claim for damages in the amount of the verdict found in his behalf by the jury. The evidence tended to show that plaintiff was rarely at the yard during the summer season, and for that reason he did not receive the letters above mentioned which were written prior to August 1st, until some time in August, and that he moved the coal which was piled against the fence and repaired the fence some time from the first to the middle of September, and that defendant at various times during the summer season did in

fact set cars upon this track for the use of other consignees.

Defendant objected to the allowance of an attorney's fee, on the ground that the court had no jurisdiction to allow it, and that its action deprived defendant of its right to a trial by jury, as provided in Section 28 of Article 2 of the Constitution of the State of Missouri, and for the further reason that the provisions of the statutes in question, permitting the assessment of an attorney's fee, were unconstitutional and void, and in conflict with Section 1 of Article 14 of the Amendments to the Constitution of the United States, and in violation of Section 30 of Article 2 of the Constitution of Missouri; and defendant also objected to the trebling of the damages for the same reasons. The objection as to the alleged deprivation of a right to a trial by a jury upon the amount of the attorney's fee allowed by the court is not urged here, and is for that reason treated as waived.

We think that the foregoing, in addition to such other matters of fact as may be noted in the opinion, is a sufficiently full statement of the facts.

I. Appellant claims that the petition in this cause does not state a cause of action, the gist of the complaint being that it does not charge that the car of coal in question was an intrastate shipment. There is no such allegation in the petition, it is true, but appellant made no attack upon the petition either by demurrer or by motion to make more definite and certain, nor did appellant even question the sufficiency of the petition by an objection to the introduction of evidence. But this objection cannot avail appellant, in any event for the reason that such an allegation was not necessary. Section 3184, Revised Statutes 1909, under which this suit was brought, contains no provision limiting its application to intrastate shipments. This limitation arises by virtue of a Federal statute, covering the field of interstate commerce, and if this shipment was, in fact, an interstate shipment, and for that reason was

*Pleading.*

not within the scope and purview of the Missouri statute, that fact was a matter of defense which should have been set up by respondent in its answer. "So, in an action upon a penal statute, if the proviso be in a separate section or a substantive clause, it is matter of defense, and should be left to the other party." [Bliss on Code Pleading (3 Ed.), p. 319, sec. 202; 36 Cyc. p. 1238; Encyc. Pleading & Practice, Vol. 16, p. 278; United States v. Cook, 17 Wall. 168; Steel v. Smith, 1 Barn. & Ald. 99.] And this was the rule at common law. [Jones v. Axen, 1 Lord Raymond, 120; Stephen's Pleading (Heard), 443.] "In pleading upon statutes, where there is an exception in the enacting clause, the plaintiff must show that the defendant is not within the exemption, but if there be an exception in a subsequent clause, that is matter of defense, and the other party must show it to exempt himself from the penalty." [1 Chitty on Pleading (16 Ed.), p. 318.] *A fortiori* is this the rule where the exemption, if any, grows, as here, out of a totally different law enacted by a wholly different lawmaking body.

II. Appellant calls our attention to the fact that this suit is brought upon a statute penal in its nature, and insists that the rule of strict construction applies. This is true. But it is also true that a statute is, nevertheless, to be construed according to its true intent and meaning. The court will take care so to construe a penal statute as not to include within its scope any act or person not plainly and fairly intended to be included therein, but it will take equal care so to construe it as not to defeat a plain and proper legislative intent. "But though penal laws are to be construed strictly, yet the intention of the Legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the Legislature." FULLER, C. J., in the United States v. Lacher, 134 U. S. 1. c. 628.] .

*Penal Statute.*

The pertinent portion of the statute upon which this suit is brought is as follows: "It shall be unlawful for any . . . common carrier . . . to subject any particular person . '. . to any undue or unreasonable prejudice or disadvantage with respect to such transportation." [Sec. 3184, R. S. Mo. 1909.] That an arbitrary and unreasonable refusal by any common carrier to deliver shipments to any person would fall within the true intent and meaning of this statute, seems plain. We do not understand that ill will or disfavor on the part of the carrier toward the consignee is a necessary element of any violation of it. The statute is not levelled at such acts only as are done with malicious intent. If there is in fact an unlawful disadvantage imposed by the carrier upon the consignee, the motive with which that injury is inflicted is immaterial. We therefore think that appellant's contention that respondent failed to make out a case because no "ill-will or disfavor" was shown to exist on the part of appellant toward respondent, is without merit.

III. Neither do we think that appellant's contention that "before appellant can be held liable it must be shown that it gave undue or unreasonable preference" to some person other than respondent, is well taken. If appellant's construction of this statute were sustained, a common carrier could refuse to deliver shipment to one consignee, and yet if it gave no special preference to any other consignees, it could not be held to have violated the law. We do not understand the law to mean that a common carrier may, without just reason, ruin a man's business by refusing to serve him, and then escape liability therefor merely

Preference.

because the injured one cannot prove that the carrier has shown an undue preference toward another. Section 3184 supra does, it is true, forbid a common carrier "to give any undue or unreasonable preference or advantage to any particular person," but with equal clearness it also forbids a common carrier "to subject any particular person . . . to any undue or unreasonable prejudice

or disadvantage.'' Either act is an offense against the law. Both might be committed at the same time, and, conceivably in the same transaction, but the offenses are not necessarily concomitant, nor in any sense inter-dependent. It is not necessary for the carrier to violate the law twice in order to be held liable once. Cohn v. Railroad, 151 Mo. App. 661, and Wynn v. Railroad, 111 Mo. App. 642, cited by appellant upon this proposition, do not support its contention.

IV. Appellant somewhat perfunctorily claims, but does not argue, that the evidence fails to support the verdict. It is not for us to pass upon the weight of the evidence, where any substantial evidence is found to exist in favor of the prevailing party. That there was such evidence in this instance admits, we think, of no dispute. In such case, the verdict of the jury is conclusive upon us, particularly when, as in the case at bar, the trial court has overruled a motion for a new trial based, in part, upon the alleged insufficiency of the evidence.

Substantial Evidence.

V. Appellant assigns as error the action of the trial court in assessing an attorney's fee as costs in this case, and also contends that Sections 3184 and 3191, Revised Statutes 1909, are in violation of the Constitution of this State and the Constitution of the United States. The specific sections of the respective constitutions thus alleged to be violated are Section 30 of Article 2 of the Constitution of the State of Missouri, and Section 1 of Article 14 of the Amendments to the Constitution of the United States. Section 30 of the Missouri Constitution relates to due process of law, and Section 1 of the Fourteenth Amendment to the Constitution of the United States is the section referring to ''due process and equal protection of the law.'' No question is made in this court concerning the method by which the attorney's fee was allowed to respondent in the trial court, nor is the amount allowed assailed as unreasonable. The attack

Attorney's Fee.

is made upon the fact that a fee was allowed at all, because, as it is claimed, the allowance both of the attorney's fee and of treble damages was in violation of the sections of the Constitution of Missouri and of the United States securing to appellant due process of law on the one hand, and due process of law and the equal protection of the law on the other.

In discussing this question, it is well to bear in mind that it is the settled law of this State that a statute will not be held to be unconstitutional unless its unconstitutionality is so obvious as to be beyond all reasonable doubt. [Bledsoe v. Stallard, 250 Mo. 154, l. c. 165.; WAITE, C. J., in Sinking Fund Cases, 99 U. S. 718.] The statutes in question are a part of Chapter 33, Article 2, of the Revised Statutes of Missouri of 1909. By Section 3179 of that article "all individuals, companies, corporations, trustees, receivers and lessees running and operating cars and trains" upon all railways in this State are declared to be common carriers. Section 3191, supra, is as follows:

"In case any such common carrier shall do or cause to be done any act or thing in Sections 3179 to 3207, inclusive, prohibited or declared to be unlawful, or shall omit to do any act or thing in said sections required to be done, then such common carrier shall be liable to the person or persons injured thereby for three times the amount of damages sustained in consequence of the violation of the provisions of said sections, together with a reasonable attorney's fee, to be fixed by the court, which fee shall be taxed and collected as part of the costs in the case."

The specific grounds here urged in support of appellant's contention are: That Sections 3184 and 3191, supra, "discriminate against one class of litigants, and in favor of another, and the penalty is unreasonable, unjust and excessive." In view of the state of the law involved, a brief discussion of the authorities in point seems necessary.

In Paddock v. Ry. Co., 155 Mo. 524, the right to have an attorney's fee taxed under a statute involved in that case was challenged, and in an opinion of this court, MARSHALL, J., said, in substance, that such a fee had been allowed and held valid in Perkins v. Railroad, 103 Mo. 52, but that "since then the constitutionality of such a statute has undergone examination by the Supreme Court of the United States in the case of G. C. & S. E. Ry. v. Ellis, 165 U. S. 150, and the statute was held to be in conflict with the Fifth Amendment to the Constitution of the United States and therefore void." [Paddock v. Mo. Pac. Ry., supra, l. c. 537.] In obedience to the decision in the Ellis case, supra, this court held the allowance of the attorney's fee to be error, and in effect overruled the Perkins case, supra, on that point. The Paddock case was followed, again upon the authority of the Ellis case, in Thompson v. Traders' Ins. Co., 169 Mo. 12, l. c. 30. But the Paddock case, though discussed, was not followed by this court in Keller v. Home Life Ins. Co., 198 Mo. 440, l. c. 459, where an attorney's fee was held properly taxable under the provisions of Section 8012, Revised Statutes 1899 (now Sec. 7068, R. S. 1909), notwithstanding the decision of the United States Supreme Court in the Ellis case, which was also discussed, but not followed. It may be noted that the decision in the Ellis case was by a divided court, Justices GREY, FULLER and WHITE dissenting on the conclusions therein announced. In view of the large number of decisions by the same court in which the Ellis case has either been distinguished or ignored, we think it may fairly be said that that decision turned upon the construction of the peculiar statute there under consideration. As construed by the United States Supreme Court, the statute involved in the Ellis case applied to railway corporations only—not to all common carriers. This was held to be an arbitrary classification, and therefore void.

In Seaboard Air Line v. Seegers, 207 U. S. 73, the court had before it a case involving a statute of the

State of South Carolina, whereby it was provided, in substance, that every claim for loss or damage to property while' in the possession of a common carrier should be adjusted and paid within forty days after the filing of such claim with an agent of the carrier, and that in the event' the carrier failed so to adjust and pay, it should be liable to a penalty of fifty dollars for every such failure. The amount involved in that specific instance was one dollar and seventy-five cents. The penalty of fifty dollars had been allowed by the trial court, and the Supreme Court of South Carolina had affirmed the decision. Speaking of this statute, Justice BREWER in the Seegers case, supra, at page 77, said:

"It is not an act leveled against corporations alone, but includes all common carriers. The classification is based solely upon the nature of the business, that being of a public character. . . .

"It may be stated as a general rule that an act which puts in one class all engaged in business of a special and public character, requires of them the performance of a duty which they can do better and more quickly ` than others, and imposes a not exorbitant penalty for a failure to perform that duty within a reasonable time, cannot be adjudged unconstitutional as a purely arbitrary classification. . . .

"Further, it must be remembered that the purpose of this legislation is not primarily to enforce the collection of debts, but to compel the performance of duties which the carrier assumes when it enters upon the discharge of its public functions. We know there are limits beyond which penalties may not go—even in cases where classification is legitimate—but we are not prepared to hold that the amount of penalty imposed is so great or the length of time within which the adjustment and payment are to be made is so short that the act imposing the penalty and fixing the time is beyond the power of the State."

The Ellis case, supra, is cited in the opinion in this case, but not followed, although both opinions were written by the same learned justice. In the Ellis case, however, it should be noted that the statute there in question applied to railway corporations only, whereas in the Seegers case the statute applied to all common carriers. The two cases were distinguished on that point.

In Atchison; Topeka & Santa Fe Ry. Co. v. Matthews, 174 U. S. 96, the United States Supreme Court had under consideration a Kansas statute that allowed a reasonable attorney's fee to a successful plaintiff in an action for damages against a railroad company. The court there distinguished the Ellis case, and upheld the Kansas statute.

In the same court, in the case of Fidelity Mutual Life Assn. v. Mettler, 185 U. S. 308, the Ellis case was again distingushed, and a statute imposing upon life and health insurance companies a liability to the holders of policies for damages and reasonable attorney's fees in the event of a failure to pay a loss within a prescribed time after demand, was upheld. This rule was reiterated in Iowa Life Ins. Co. v. Lewis, 187 U. S. 335; Farmers & Merchants Ins. Co. v. Dobney, 189 U. S. 301; K. C. Southern R. R. Co. v. Anderson, 233 U. S. 325 (in which double damages as well as attorney's fees were allowed); Yazoo & M. V. R. R. Co. v. Jackson Vinegar Co., 226 U. S. 217; M., K. & T. Ry. Co. v. Cade, 233 U. S. 642; M., K. & T. Ry. Co. v. Harris, 234 U. S. 412; Mo. Pac. Ry. Co. v. Larrabee, 234 U. S. 459; St. Louis, I. M. & S. Ry. Co. v. Williams, 40 Sup. Ct. Rep. 71, and many other cases.

In Yazoo & M. V. R. R. Co. v. Jackson Vinegar Co., supra, the constitutionality of a statute of Mississippi, imposing a penalty upon a common carrier for failure to settle claims for damages to goods in shipment, was involved. The amount for which suit was brought in that instance was four dollars and seventy-five cents. A penalty of twenty-five dollars was allowed

the plaintiff in the court below. The statute was leveled against "railroad corporations and individuals engaged as common carriers" in that State. In that case the court, speaking through Mr. Justice VAN DEVANTER, said:

"As applied to such a case, we think the statute is not repugnant to either the due process of law or the equal protection clause of the Constitution, but, on the contrary, merely provides a reasonable incentive for the prompt settlement, without suit, of just demands of a class admitting of special legislative treatment. See Seaboard Air Line Ry. v. Seegers, 207 U. S. 73; St. Louis, Iron Mountain & Southern Ry. Co. v. Wynne, 224 U. S. 354." [Yazoo & M. V. R. R. Co. v. Jackson Vinegar Co., 226 U. S. supra, l. c. 219.]

In the case of M. K. & T. Ry Co. v. Cade, 233 U. S. l. c. 650, a statute of the State of Texas imposing an attorney's fee on the defeated defendant in certain classes of cases, was under review, upon the charge that the act was void because in conflict with the same section of the Federal Constitution here cited. The Texas statute was directed against "any person or corporation doing business in this State." As stated in that opinion, the plaintiff in error relied chiefly upon the Ellis case, supra. After calling attention to the fact that this statute was applicable to all persons both natural and artificial, the court said:

"As has been said before, the Fourteenth Amendment does not require that state laws shall be perfect; and we cannot judicially denounce this act as based upon arbitrary distinctions, in view of the wide discretion that must necessarily reside in a state legislature about resorting to classification when establishing regulations for the welfare of those for whom they legislate. [Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 293; Orient Ins. Co. v. Daggs, 172 U. S. 557, 562; Louisville & Nashville R. R. v. Melton, 218 U. S. 36, 52; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78.] . . .

"If the classification is otherwise reasonable, the mere fact that attorney's fees are allowed to successful plaintiffs only, and not to successful defendants, does not render the statute repugnant to the equal protection clause. This is not a discrimination between different citizens or classes of citizens, since members of any and every class may either sue or be sued. *Actor* and *reus* differ in their respective attitudes toward a litigation; the former has the burden of seeking. the proper jurisdiction and bringing the proper parties before it, as well as the burden of proof upon the main issues; and these differences may be made the basis of distinctive treatment respecting the allowance of an attorney's fee as a part of the costs. [Atchison, Topeka, etc., Railroad v. Matthews, 174 U. S. 96; Farmers' etc., Ins. Co. v. Dobney, 189 U. S. 301, 304; McMullin v. Doughty, 68 N. J. Eq. 776, 781.]"

In the same case it was held that the allowance of an attorney's fee should not be regarded as a penalty, but that it stood upon the same basis as ordinary court costs, and the court said: "If a reasonable penalty may be imposed for a failure to satisfy a demand found to be just, it follows *a fortiori* that costs and an attorney's fee may be." [M. K. & T. Ry. v. Cade, supra, l. c. 652.]

In Missouri Pacific Ry. Co. v. Larrabee, 234 U. S. 459, the right of the plaintiff to recover attorney's fees in a mandamus proceeding was involved. Such a right was conferred by the statutes of Kansas. The attack was made there, as here, that the allowance of an attorney's fee in such a case was void under the provisions of the Fourteenth Amendment. The allowance was held proper under the authority of the Cade case, supra. In the Larrabee case, however, the liability to pay an attorney's fee seems to have applied to all persons against whom the mandamus was issued.

In the case of C., M. & St. P. Ry. Co. v. Polt, 232 U. S. 165, a statute which is not set out in the opinion was held to offend against the Fourteenth Amendment, in a very brief utterance by Justice Holmes. It appears

from a portion of the statute quoted in the opinion that under a statute of South Dakota a railroad company was held absolutely responsible for property destroyed by a fire communicated from its locomotive, and the damages should be doubled unless paid within sixty days from the date of service of notice of the claim, but if within sixty days after notice of loss it should ''offer in writing to pay a fixed sum, being the full amount of the damages sustained, and the owner shall refuse to accept the same, then in any action thereafter brought for such damages when such owner recovers a less sum as damages than the amount so offered, then such owner shall recover its costs.'' In the trial court the plaintiff recovered a judgment of seven hundred and eighty dollars. The railway company had offered to pay five hundred dollars. A judgment for double damages was affirmed by the Supreme Court of South Dakota, Justice HOLMES said in that case at page 168:

''No doubt the states have a large latitude in the policy that they will pursue and enforce, but the rudiments of fair play required by the Fourteenth Amendment are wanting when a defendant is required to guess rightly what a jury will find, or pay double if that body sees fit to add one cent to the amount that was tendered, although the tender was obviously futile because of an excessive demand. The case is covered by St. Louis, Iron Mountain & Southern Ry. Co. v. Wynne, 224 U. S. 354. It is not like those in which a moderate penalty is imposed for failure to satisfy a demand found to be just. [Yazoo & Mississippi Valley R. R. Co. v. Jackson Vinegar Co., 226 U. S. 217.]''

The judgment was reversed for the reason set forth in the quotation. The Ellis case was cited in the briefs, but not noticed in the opinion.

In C., R. I. & Pac. Ry. Co. v. Farmers' Elevator Co., 226 U. S. 426, the same question was presented to the United States Supreme Court, under a Minnesota statute, and the judgment in favor of the plaintiff below,

which had been affirmed in the Supreme Court of Minnesota, was reversed. The decision of the United States Supreme Court, however, turns solely upon the point that by the passage of the Hepburn Act Congress had taken exclusive possession of the field of legislation relating to such commerce, and for that reason the Minnesota statute was void.

In the case of Atchison, Topeka & Santa Fe Ry. v. Vosburg, 238 U. S. 56, the court had under consideration a statute of Kansas which required a railway company to furnish cars to shippers, and provided a penalty of five dollars per day for each car not supplied, and for a reasonable attorney's fee in addition. By a reciprocal provision of this statute, shippers who failed to use cars placed at the disposal were subject to a penalty for their detention, but were not liable for attorney's fees. Vosburg recovered judgment against the railway company for violation of this statute, including an attorney's fee, and the case was taken to the United States Supreme Court on the ground that the statute denied the railway company the equal protection of the law guaranteed by the Federal Constitution, because of the fact that under the same statute the railway company might be compelled to pay a fee, but no such liability attached to the other party. This contention was sustained by the Supreme Court. The case is said to be essentially different from the Matthews, Cade and Anderson lines of cases, because of the distinction made in the statute in question between the parties to such suits.

The whole question seems to be set at rest in the very recent case of St. Louis, Iron Mountain & Southern Ry. Co. v. Williams, 40 Sup. Ct. Rep. 71, decided December 8, 1919. In this case a statute of Arkansas regulating the rates for the transportation of passengers provided that any railroad company which should collect a greater compensation than that prescribed in the statute should, for every such offense, be subjected to a penalty of "not less than fifty dollars nor more than three hundred dollars, and costs of suit, including a reasonable attorney's

fee.'' The aggrieved passenger was given the right to recover the penalty and costs, including the attorney's fee, in a civil action. In that case the railway company had charged each of two passengers sixty-six cents more than the prescribed fare. Suit was brought to recover the penalty and attorney's fees, and judgment obtained for a penalty of seventy-five dollars and twenty-five dollars attorney's fee in each case. The constitutionally of the Arkansas statute was attacked upon the same grounds as in the case above mentioned and the case at bar. The judgment of the trial court was, however, affirmed, in an opinion by Mr. Justice VAN DEVANTER, in which the court points out that it is immaterial that the penalty goes to the aggrieved passenger and not to the state, and holds that this is not contrary to due process of law, nor is it requisite that the amount of the penalty should be confined or proportioned to the passenger's loss or damages, for the reason that it is imposed as a punishment for the violation of a public law. Although the penalty and the attorney's fee in that case amounted to one hundred dollars, and the offense of the carrier involved only sixty-six cents, the court nevertheless said: ''We think it properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the 'offense, or obviously unreasonable.''' (l. c. 73.)

The constitutionality of statutes similar to the one here in question has been upheld repeatedly by the Federal courts, and by the courts of last resort of probably a majority of the states of the Union, at least to the extent of allowing a reasonable attorney's fee to be taxed and reasonable damages to be awarded against the offender. A careful review of the authorities leads, we think, irresistibly to this conclusion. St. L. S. W. R. R. Co. v. Cone, 111 Ark. 309.; Atl. Coast Line Co. v. Perry, 67 So. 639; Peoria, D. & E. Ry. Co. v. Duggan, 109 Ill. 537, Ill. Central Railroad v. Crider, 91 Tenn. 489.; M. K. & T. Ry. Co. v. Simonson, 64 Kan. 802; Burlington C. R. & N. Railroad v. Dey, 82 Iowa, 312 Cameron v. C. M. & St. P. Ry. Co., 63 Minn. 384, are a few of the cases which

may be cited in support of this statement. It is necessary, however, as said in the Williams case, *supra,* that the penalty so imposed shall not be "so severe and oppressive as to be wholly disproportioned to the offense, and obviously unreasonable."

Is the penalty of treble damages imposed by our statute in this instance so severe as to fall within that rule? In the consideration of this question it is proper to give much weight to the fact that the General Assembly, whose duty it was in the first instance to fix the amount of the penalty, evidently thought treble damages to be justified under the conditions involved and in view of the character of the ills to be remedied. State legislatures are still accorded "wide discretion" and "large latitude" in these matters, even under the decisions of the United States Supreme Court. The sections here assailed were first enacted in 1887, and we do not find that the penalty provided has ever before been questioned on the ground of excessiveness, and certainly it has never been adjudged to be so in any appellate court. Practical experience for almost a whole generation has thus apparently justified the wisdom of the law and the amount of the penalty. Furthermore, we think it may safely be assumed that in most claims arising from non-delivery of freight shipments, the amount involved as damages is rarely large, and generally is quite small. In the case in hand, although the amount claimed was one thousand dollars, the amount allowed was only two hundred dollars, and this sum, though trebled, cannot be said to involve a great hardship. A penalty which is not sufficiently severe to prevent frequent infractions of the law, falls short of its purpose. In view of the enormous amount of freight annually handled by common carriers in this State, and of the infrequency with which the penalty provided in this instance has been a subject of litigation, it would seem to be a fair inference, after a fair test in actual experience, that the section in question has demonstrated the wisdom of the Legislature in enacting it. It is a matter of com-

mon knowledge that during the time that this law has stood upon our statute books, the common carriers of this State have not lacked either the means or the disposition to appeal to the law-making body and to the courts for redress of their grievances, or for protection of their rights. It cannot be said that they have been accorded an unkindly reception in either forum, and hence the fact that in more than thirty years the validity of this penalty has rarely, if ever, been questioned on the ground that it is excessive, is strongly persuasive that it has not been found to be oppressive. We do not think that we would be justified in holding Section 3191, supra, to be unconstitutional on this ground.

In view of the present attitude of the Supreme Court of the United States upon the questions here involved, as evidenced by the opinions we have cited, we conclude that Sections 3184 and 3191, supra, are not repugnant to the provisions of the Federal Constitution relating to the due process of law or equal protection of the law. By parity of reasoning, they are not in conflict with the due process of law clauses of our State Constitution. Paddock v. Mo. Pac. Ry. Co., 155 Mo. 524, and Thompson v. Traders Ins. Co., 169 Mo. 12, in so far as they may be thought to be authority to the contrary, are hereby overruled.

Few graver duties devolve upon the courts than that of passing upon questions of constitutional law. The power of a court to annul an act of Congress or the Legislature is peculiar to American jurisprudence and was long hotly contested. While the existence of that power has been firmly established both upon reason and authority, it is to be exercised only after solemn deliberation, with the utmost care, and upon conviction beyond a reasonable doubt. The great master of constitutional law, in discussing this question said:

"The question, whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court,

when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligations which that station imposes; but it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." [MARSHALL, C. J., in Fletcher v. Peck, 6 Cranch, 87, 1. c. 128.]

For the reasons stated, the judgment should be affirmed. It is so ordered. All concur, except GRAVES, J., who dissents in separate opinion in which *Woodson,* J., concurs.

GRAVES, J. (dissenting).—I. From the facts stated, I agree to most that is written in the majority opinion, except the latter part thereof which deals with the reasonableness of the penalty imposed by our statute, and the statement in the first paragraph thereof, wherein it is said: "The statute under which this suit is brought contains no provision limiting its application to intra-

Unreasonable Penalty. state shipments." I think the penalty imposed is so unreasonable as to make the statute in question violative of the provisions of the Federal Constitution, discussed, and learnedly discussed, by my brother. Many of the cases cited by my brother would so indicate. There mere fact that this statute has not heretofore reached the Federal court, or this court, may as well be explained upon the theory that the lawyers of the State feared the results, and hence refrained from asking the doubling or trebling of damages, as upon the theory that the corporations reached thereby recognized its reasonableness. The divers and sundry McGrew cases upon our books are illustrative. There were penalty clauses in the statutes covering those cases, but astute counsel for plaintiff never invoked them. Nor are claims for damages under statutes having penalty clauses always or usually trivial in amount. The Mc-

Grew cases, supra, are illustrative. Others might be cited, but these suffice.

What is the actual penalty fixed by this statute? In my judgment it is (1) the attorney's fee, and (2) the giving to a plaintiff of twice the amount of his adjudicated claim, in addition, as a penalty. In other words the statute not only allows the plaintiff to recover that to which he is entitled as damages, but it goes further and requires the defendant to pay an attorney's fee, and in addition to the adjudicated actual damages, twice the amount of the adjudged damages, for such is the result of treble damages. It can't be well said that the allowance of an attorney's fee, is other than a penalty. I think the statute violates the provision of the Federal Constitution discussed by my brother, and as the action is under the statute, the judgment should be simply reversed.

II. The action is brought under Sections 3184 and 3191, Revised Statutes 1909. Section 3204 limits in specific terms these statutes to intrastate shipments, and for that reason I dissent from what is said in paragraph one of the majority opinion, quoted, supra. Section 3204, Revised Statutes 1909, reads:

"All the provisions of said Sections 3179 to 3207 shall be held to apply to shipments made from any point *within* the State to any point *within* the State, whether the transportation of the same shall be wholly within this State or partly within this and adjoining State or States." The italics are ours.

It will be noted that this section covers both sections involved in this action. It is a qualification to the broad language of these sections, and limits their application to intrastate transactions. We have so specifically ruled. [Seawell v. Railway Co., 119 Mo. l. c. 233 et seq.]

So whilst we concur in the ruling that defendant should have pleaded an interstate shipment, if in fact, there was one, yet we do not concur in the view that our statutes cover anything further than intrastate ship-

Vol. 282          APRIL TERM, 1920.          261

State ex rel. Tank Car Co. v. Sullivan.

ments. Had the plaintiff's petition shown this car of coal to have been an interstate shipment, it would have been demurrable. Not only has this court held these statutes applicable only to intrastate shipments, but in Steel v. Railroad, 165 Mo. App. 1. c. 316, et seq., the St. Louis Court of Appeals has so ruled.

Our statute would seem to make intrastate commerce out of a shipment which started in this State and ended in this State, although the shipment traversed through another state between the starting and stopping points. That kind of a shipment has been denominated interstate by the United States Supreme Court. [Hanley v. K. C. Southern Ry. Co., 187 U. S. 617.] Clear it is that our statutes have no reference to interstate matters, and this suffices. For the reasons stated, I dissent. *Woodson, J.,* consurs.