# ROY STROUD, Respondent, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

### Springfield Court of Appeals, January 14, 1922.

1. **CARRIERS: Discrimination in Furnishing Cars, Held for Jury in Suit for Treble Damages.** Discrimination in furnishing cars *held* for jury in suit under Revised Statutes 1919, sections 9985, 9990, for treble damages.

2. **————: Need not Ship by Cheaper of Two Routes Where Unreasonable to do so.** While it is ordinarily the duty of a carrier operating two lines between the same points to ship by the cheaper route, it is not required to do so, where, considering its own interest and that of the public, as well as the shipper's, it would be unreasonable.

3. **COMMERCE: Action Lies Under State Law for Discrimination in Furnishing Cars for Shipment, Which Could Have Gone Over Either Intrastate or Interstate Route.** An action lies under Revised Statute 1919, section 9985, for damages for discrimination in furnishing cars for the shipment of lumber, which could have gone over either an intrastate or interstate route.

4. **EVIDENCE: Statements of Train Crew Held Incompetent in Action for Discrimination in Furnishing Cars for Shipment.** In an action for discrimination in furnishing cars for a shipment of lumber, plaintiff's testimony that defendant's conductor, to whom he spoke about the cars, said, "You haven't given us nothing for what we have already given you yet," and that the brakeman said: "You might buy us some cigars if nothing else," was improperly admitted, especially in view of other evidence that plaintiff's competitors had been somewhat generous with their turkeys; the evidence showing that the train crew had nothing to do with furnishing cars except to deliver them.

5. **CARRIERS: Instruction in Suit for Discrimination in Furnishing Cars held Erroneous in Ignoring Material Finding.** In a suit for treble damages for discrimination in preferring shippers, who ordered and were furnished cars after plaintiff ordered cars for shipping lumber, wherein defendant endeavored to show cars furnished others on subsequent orders were for shipping mine material, preferred by an Interstate Commerce Commission order, and the evidence showed

some cars so furnished were for such material, and some of the preferred shippers shipped lumber and mine material, an instruction for plaintiff, based on a preference of other shippers, requiring the jury to find that after plaintiff's cars were ordered other shippers at the station in question ''engaged in the business of shipping lumber'' ordered cars, and were preferred, was erroneous in not requiring the jury to find that such cars were not loaded with mine material.

6. **APPEAL AND ERROR: Error as to Measure of Damages, Avoidable on Retrial, not Considered.** Error in an instruction on the measure of damages will not be considered on appeal where it may be avoided on retrial.

7. **RAILROADS: Owner of Road Returned by Federal Transportation Act Liable for Discrimination.** Though the federal Transportation Act, February 28, 1920, section 208a, provides that all regulations in effect February 29, 1920, on lines subject to the Interstate Commerce Act should continue in effect until changed by State or Federal authority, and that no such regulation should be changed prior to September 1, 1920, without the Commission's approval, a railroad company discriminating in furnishing cars between such dates is liable for treble damages, under Revised Statutes 1919, section 9990.

Appeal from the Circuit Court of Butler County.—*Hon. Almon Ing*, Judge.

REVERSED AND REMANDED.

*J. C. Sheppard* for appellant.

(1) Respondent was permitted to testify over the objections of appellant to what the conductor and brakeman said to him on another occasion as to the furnishing of cars. This was objectionable because it was not shown to be the duty of the conductor or brakeman to furnish cars; and for the further reason that the admissions of these agents were not made at the time of the transaction. And this is reversible error. Bevis v. B. & O. Ry. Co., 26 Mo. App. 19; McDermott v. Railroad, 73 Mo. 516; Adams v. Railroad, 74 Mo. 553; Atkinson v. School of Osteopathy, 240 Mo. 338; Robirson v. Bush, 200 S. W. 757. (2) The court erred in rendering a judgment

for three times the amount of the verdict of the jury, over the objections and exceptions of appellant, and also in refusing to sustain the motion in arrest of judgment. This was clearly a penalty for the violation of the statute under which respondent brought his action. During the period of federal control penalties could not be collected against common carriers, even those fixed by the laws of the several States. Hines v. Taylor, 84 So. (Fla.) 381; Jackson-Tweed Lbr. Co. v. Sou. Ry. Co., 101 S. E. (S. C.) 924; Mo. Pac. Ry. Co. et al. v. Ault, 41 Sup. Ct. 593; No. 17 Adv. Sheets Sup. Ct. Rep. 593.

*Cope & Tedrick* for respondent.

(1) The court did not err in admitting in evidence the statements made by the conductor and brakeman (appellant's abstract, pp. 17, 18, 19), as these statements were made in explanation of the failure to deliver cars to plaintiff, and were made in connection with their work of handling and setting out cars on the sidetracks. Robinson v. Bush, 200 S. W. 757; Heading & Stave Co. v. St. L., I. M. & S. Ry. Co., 119 Mo. App. 495. (2) The court did not err in refusing defendant's instructions in the nature of a demurrer to the evidence, at the close of plaintiff's case, for the reason there was sufficient evidence on the part of plaintiff tending to show there was a preference shown the Rash Lumber Company in the distribution of cars. (Appellant's abstract, page 14). Shoptaugh v. St. L. & S. F. Ry. Co., 147 Mo. App. 8. (3) There was no shipment and nothing in the transaction pertaining to a shipment. The suit was for "unlawful discrimination" between shippers, and it is not a question whether the cars denied the plaintiff were intended for shipment within the State or without. It was sufficient that the offense was committed within the State. Puritan Coal Mining Co. v. Penn. Ry. Co., 85 Atl. Rep. 426; Missouri Pacific Ry. Co. v. Larabee Mills, 211 U. S. 612 (and cases there cited); Rittman v. Mo. Pac. Ry. Co., 184 Mo. App. 424.

BRADLEY, J.—Plaintiff filed his petition based on section 9985 and 9990, Revised Statutes 1919, to recover treble damages for alleged discrimination in furnishing cars for the shipment of lumber. The cause was tried to a jury, and a verdict of $500 was returned. This was trebled in accordance with section 9990, and judgment rendered. Failing to get a new trial defendant appealed.

Plaintiff alleged that June 12, 1920, he had 20,000 feet of lumber stacked at Oxley on defendant's road, in Ripley County, of the market value of $60 per thousand, and that on that day he made application to defendant through its station agent at Oxley for two cars in which to ship this lumber to St. Louis, Mo., that defendant failed to furnish these cars within a reasonable time, and that after plaintiff had made his application, defendant furnished cars for like purpose to other shippers before he was furnished; that although he made his application June 12th, he received no cars until August 19th, and that in the meantime his lumber had greatly depreciated in value, and that he was damaged in the sum of $1000.

Defendant denied generally any discrimination, and alleged that in pursuance of plaintiff's order of June 12th it placed two cars for plaintiff, and that he failed for the period of four days to load them, and thereafter cancelled his order and voluntarily consented for another lumber shipper to use them. Defendant alleges that if any cars were delivered to other shippers after plaintiff filed his order and before he was supplied that such was in obedience to preferences made by the Interstate Commerce Commission. Further answering, defendant alleged that it moved its cars from Oxley to St. Louis over two routes; one over its line of railroad through the State of Missouri for the entire distance from Oxley to St. Louis; the other via Thebes, Illinois, and thence through the State of Illinois to St. Louis; and that the usual and regular way of routing cars loaded with lumber at Oxley and consigned to St. Louis would be over

the interstate route, and would be interstate commerce, and that section 9985 of our statute has no application, and that the court had no jurisdiction.

Defendant concedes that plaintiff on June 12th ordered two cars for the purpose of shipping lumber. Two cars were placed for plaintiff July 22nd, and July 26th were given to one Rash because plaintiff, as claimed by defendant, could not get a crew. The record shows that a number of the same kind of cars were ordered by other shippers subsequent to plaintiff's order, and that many of these were furnished before plaintiff was furnished. Plaintiff wanted his cars for lumber only while none of those furnished to other shippers in alleged violation of plaintiff's rights are designated as for lumber only, but a number are designated as for "lumber and ties," and some for "props." We infer, however, from the record that a number of these cars were loaded with lumber only. Plaintiff denied that his cars were placed July 22nd, and that he consented for Rash to have them. He also denies that he failed to load because he could not get hands. He says that it was the latter part of August that he consented for Rash to have a car he had ordered. Defendant makes no claim that the Interstate Commerce Commission had ordered any preference except as to cars carrying mine props or other material for coal mines.

. Defendant assigns as error: (1) The refusal of its peremptory instruction at the close of the case; (2) the admission of evidence; and (3) the giving and refusal of instructions; (4) in rendering judgment for treble damages.

The first assignment is based upon two propositions. First, that there is no substantial evidence to support the verdict, and, second, that the cars ordered, if furnished, would have been for an interstate shipment and therefore the statute under which plaintiff is proceeding would have no application. At the close of plaintiff's case defendant offered a demurrer, and was overruled.

It did not stand upon its demurrer, but introduced its evidence, and the cause stands here upon the whole record. When the whole record is considered we think the evidence was sufficient to take the case to the jury. The second feature of the first assignment raises a somewhat new question. If defendant had only the Illinois route from Oxley to St. Louis then a car ordered as plaintiff ordered would be ordered for an interstate shipment. But defendant has a line of railway from Oxley to St. Louis wholly within the State of Missouri, and the evidence shows that the shipment could have been over the intrastate route. Defendant showed by its superintendent of transportation that a shipment of lumber from Oxley to St. Louis would go via the Illinois route as "a matter of operating convenience and economy." The Missouri line "passes over Iron Mountain and other Ozark hills, and it is very expensive to handle tonnage over these hills. To avoid these hills the routing as given in the circular was over the much more level line, running up the Illinois side of the river." Defendant's agent at Doniphan near Oxley and in the same county and on the same line of railroad was called by plaintiff and asked as to the routing of lumber from Doniphan. His answer was: "Well, so far as the routing is concerned, on the bill of lading we just merely put it from Doniphan to St. Louis; that gives the shipper the benefit of what is called the 'Missouri Rail' rate if he asks for it; but so far as the routing on the bill of lading is concerned it simply says from Doniphan to St. Louis. Q. If the notation 'Missouri Rail' is on the bill, what does that mean? A. That it is to be charged the Missouri tariff, like freight that is kept within the State. . . . Now, we simply route them Doniphan to St. Louis; if there was nothing specified on the bill it would be routed over the Illinois route and rated that way, but if specified 'Missouri Rail' rate, it was supposed to go on the Missouri side, at any rate, they had the benefit of that tariff; we never know how they take them, we

simply turn the shipment loose to the main line for them to handle as they please.  Q.  It would go over what route then, marked 'Missouri Rail'?  A.  Well, they could actually take. it over whichever route they wanted, but by specifying that, it wouldn't cost the shipper any more, could be sent either way.  That was my understanding, but by specifying Missouri Rail, that would protect the shipper on the Missouri rate; it was immaterial to us where the car went.  Q.  You charged no more to route it no the other side?  A.  No, sir; we billed to St Louis, over the Missouri rail; they could handle it any way they wanted to.''

It does not appear whether plaintiff designated ''Missouri Rail'' with reference to the cars of lumber he had shipped to St. Louis or not, but it is reasonable to assume that any shipper would do so if he knew and understood that the rate would be less.  The rate on a car of lumber from Oxley to St. Louis if designated ''Missouri rail'' by the shipper would be the intrastate rate and not the interstate rate.  But where a carrier is operating two lines between the same points, and the rate over one is less than over the other it is ordinarily the duty of the carrier to ship by the cheaper route. This duty is not absolute, however.  The carrier is not bound to consider only the shipper's interest, but should consider the enterest of the public and its own, and if, all things considered, it would be unreasonable to ship by the cheaper route the carrier is not required to do so. [Northern Pac. Ry. Co. v. Solum, 247 U. S. 477, 38 Sup. Ct. Rep. 550, 62 L. ed. 1221.]  In State ex rel. v. Commission, 270 Mo. 63, 189 S. W. 377, in discussing interstate and intrastate shipments, it is said: . ''An intrastate or interstate movement of a commodity is usually to be determined from certain elemental facts common in the majority of cases to all shipments.  These are the intention of the shipper as indicated by the bill of lading, the continuity of the movement of the commodity, and its delivery under the contract of shipment.  There

are adjudicated cases from which some of these are absent. When this occurs other facts are found to be present due to the nature of the particular case, of sufficient probative force to determine the nature of the shipment. Applying the elementals noted, we find that an 'interstate shipment' exists when a commodity has been turned over by a shipper to a common carrier to be transported from one State to another under a contract of shipment; the definite character of such shipment being fixed when the movement of the commodity has commenced for the purpose of transportation. If, however, the commodity has been committed to the carrier by the shipper for transportation from one point to another in the same State, the character of the commerce is intrastate in its nature, subject to certain limitations not in this case, but which we will notice later.''

The State court it would appear would have no jurisdiction to enforce the provisions of section 9985, Revised Statutes 1919, when an interstate shipment is involved. [Steel v. Railroad, 165 Mo. App. 311, 147 S. W. 217; Alexander v. Railroad, 282 Mo. 236, 221 S. W. 721.] Plaintiff contends that the fact that the shipment is interstate would make no difference, citing Puritan Coal Mining Co. v. Railroad, 85 Atl. (Pa.) 426, same case 237 U. S. 121. But we do not think that an interstate commerce question is involved. If the cars plaintiff ordered must have gone by the interstate route then there would be a different question, but such is not the case. The cars could have gone by the intrastate route, and we will not assume that they would not have done so. True defendant's superintendent of transportation says that lumber shipped from Oxley to St. Louis is sent over the interstate route of defendant's railroad, but Tanner, defendant's agent at Doniphan, on the same line as Oxley, says that a shipment of lumber from Doniphan is marked ''Missouri rail'' and turned ''loose to the main line for them to handle as they please.'' In this situation we decline to hold that plaintiff cannot proceed in

the state court. [See Missouri Pacific Railway Co. v. Larabee Flour Mills Co., 211 U. S. 612.]

(2) The evidence admitted of which complaint is made pertained to alleged conversations or statements made to plaintiff by the train crew subsequent to the time he ordered his cars. Plaintiff testified that he spoke to defendant's conductor about his cars, and that the conductor in reply said: "You haven't give us nothing for what we have already given you yet." Plaintiff testified that he asked defendant's brakeman about the cars, and that the brakeman said: "You might buy us some cigars if nothing else." The evidence shows conclusively that the train crew had nothing whatever to do with furnishing cars except to deliver them. These alleged statements by the conductor and brakeman were not made in connection with the work or business they were transacting. The train crew's business so far as concerned plaintiff was to deliver the cars, not to furnish them. The furnishing was done by other agents and officers. This evidence was incompetent, and should not have been admitted, especially in view of other evidence tending to show that plaintiff's competitors had been somewhat generous with their turkeys. In Robinson v. Bush, 200 S. W. 757, we determined a similar question, and it is not necessary to further discuss the question here.

(3) Defendant complains of instruction number 1 given for plaintiff. This instruction is as follows: "The court instructs the jury that if you believe and find from the evidence that the plaintiff, Roy Stroud, had on the 12th day of June, 1920, a quantity of lumber placed at Oxley, Missouri, a station on defendant's railroad, at the place provided by defendant for such shipments, and that he made application of defendant's agent at the said station for cars in which to ship said lumber, and that the lumber was tendered for shipment under the terms and conditions imposed by defendant; and if you further find that after the said cars were ordered,

and application therefor was filed by plaintiff, and before same were delivered, other shippers at the said station at Oxley, Missouri, engaged in the business of shipping lumber over defendant's railroad, ordered cars from defendant's agent at station aforesaid, and that defendant furnished cars to them in preference to plaintiff; and if you further find that such preference, if any, resulted in a loss to plaintiff, then your verdict must be for plaintiff for such sum as you believe from the evidence he has been damaged, not to exceed One Thousand ($1000) Dollars.''

Defendant says this instruction authorized the jury to find a verdict for the respondent if they found from the evidence that before respondent's order for cars was filled that other orders of shippers at Oxley, Missouri, engaged in the business of shipping lumber over appellant's railroad, made after respondent's order, were filled prior to the orders of respondent, without requiring the jury to further find that the cars shipped by other shippers were not loaded with lumber or other material that had a preference under the Interstate Commerce Commission rulings.

The evidence discloses that cars loaded with mine props and other material for coal mines had preference by order of the Interstate Commerce Commission, and to receive an order for and furnish a car for such purpose subsequent to plaintiff's order would not be an unlawful discrimination. The evidence further discloses that some of the cars ordered and furnished subsequent to plaintiff's order were for coal mine material. Defendant endeavored to show that all the cars ordered by and furnished to other shippers subsequent to plaintiff's order, except those which it is claimed plaintiff voluntarily released, were for coal mine material. This instruction ignores that feature. Plaintiff seeks to justify this instruction because it requires the jury to find ''that after the said cars were ordered and application therefor was filed, and before same were delivered, other

shippers at the said station at Oxley, Missouri, *engaged in the business of shipping lumber*, over defendant's railroad," etc. This might be some justification if the evidence did not show that some of the shippers in whose favor plaintiff claims defendant discriminated were shippers of lumber *and* mine material. As the instruction stands, if a shipper of *lumber* was favored over plaintiff, then plaintiff could recover, regardless of whether such perference was for mine material or not.

Defendant complains of plaintiff's instruction on the measure of damages. Any error in respect to the measure of damages can perhaps be avoided on a retrial by plaintiff making his evidence more explicit and to the point.

(4) Defendant contends that the court had no legal right to enter a judgment for treble damages; that the penal feature of our statute (Section 9990, Revised Statutes 1919), cannot be invoked in this case, because to do so would be in effect to penalize the Government of the United States. In other words defendant contends that at the time of the transaction complained of by plaintiff, between June 12th and August 19, 1920, the defendant's railroad was still under Federal control by virtue of the Act of Congress of February 28, 1920, commonly known as the Transportation Act. Section 208 (a) of this act, and the one on which defendant relies, is as follows: "All rates, fares and charges, and all classifications, regulations and practices, in any wise changing, affecting or determining any part or the aggregate of rates, fares or charges, or the value of the service rendered, which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by State or Federal authority, respectively, or pursuant to authority of law; but prior to September 1, 1920, no such rate, fare or charge shall be reduced, and no such classification, regulation or practice shall be changed in such manner as to reduce any such rate, fare or charge, unless such reduction or change is approved by the Commission." Defendant's road may

at the time have been under *Federal Control* or *almost,* but the Government of the United States had ceased to operate it, and it had been turned back to the *owner,* and the owner, defendant here, after the act of February 28, 1920, because responsible under the law, and not the Government.

For the errors noted the cause is reversed and remanded. *Cox, P. J.,* and *Farrington, J.,* concur.